## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 25-cv-25228

**HAPPY FEET COMPANY LLC**,

    *Plaintiff,*

v.

**THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A**,

    *Defendants.*

_____/

## COMPLAINT

Plaintiff, HAPPY FEET COMPANY LLC ("Plaintiff" or "HAPPY FEET"), hereby alleges as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A[1] (collectively, "Defendants").

## INTRODUCTION

1.    This is a civil action for trademark infringement to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use unauthorized and unlicensed products that infringe Plaintiff's registered trademarks.

2.    Specifically, Defendants have infringed Plaintiff's trademarks covered by U.S. Trademark Registration Nos. 7,198,440 and 6,897,260 (the "HAPPY FEET Trademarks").

_____

[1] Plaintiff submits herein a redacted version of the Schedule A and intends to promptly file a motion to file the full unredacted Schedule A under seal once the Court's filing system permits the Plaintiff to do so after the Judge is assigned.

3.      The HAPPY FEET Trademarks are valid, subsisting, and in full force and effect. Plaintiff is the owner and lawful assignee of all right, title, and interest in and to the HAPPY FEET Trademarks.  True and correct copies of the federal trademark registrations for the HAPPY FEET Trademarks are attached as **Exhibit 1**.

4.      Each Defendant directly and/or indirectly imports, develops, designs, manufactures, distributes, markets, offers to sell and/or sells products that infringe directly and/or indirectly upon the HAPPY FEET Trademarks (the "Counterfeit Products") in the United States, including in this Judicial District, and otherwise purposefully directs infringing activities to this district in connection with the Counterfeit Products.  By selling the Counterfeit Products that purport to be genuine and authorized products using the HAPPY FEET Trademarks, Defendants cause confusion and deception in the marketplace.

5.      Defendants conduct this deceptive activity through their numerous fully interactive commercial Internet e-commerce stores operating under the online marketplace accounts identified in the Schedule A (collectively, the "Defendant Internet Stores"), including but not limited to the platforms  Amazon.com  ("Amazon"),  and  Walmart.com  ("Walmart")  (collectively,  the "Marketplace Platforms").

6.      Defendants  design  their  online  marketplace  accounts  to  appear  to  be  selling Plaintiff's genuine products properly bearing, using, and utilizing the HAPPY FEET Trademarks, while selling inferior imitations of such products.

7.      The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them and demonstrating that the Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

8.     Defendants attempt to avoid liability by operating under one or more seller aliases to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' infringement of the HAPPY FEET Trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet.

9.     As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged by consumer confusion, dilution, and tarnishing of its valuable trademarks and goodwill. Plaintiff therefore seeks injunctive and monetary relief.

## SUBJECT MATTER JURISDICTION

10.     This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq*.; and 28 U.S.C. §§ 1331, 1338(a)–(b).

## PERSONAL JURISDICTION AND VENUE

11.     Personal jurisdiction exists over Defendants in this Judicial District pursuant to Stat. § 48.193(1)(a)(1)–(2), (6); or, in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, each Defendant regularly conducts, transacts, and/or solicits business in Florida and in this Judicial District, and/or derives substantial revenue from business transactions in Florida and in this Judicial District and/or otherwise avails itself of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

12.     In addition, each Defendant has offered to sell and ship and/or sold and shipped Counterfeit Products into this Judicial District.  Defendants' infringing actions caused injury to Plaintiff in Florida and in this Judicial District such that Defendants should reasonably expect such

actions to have consequences in Florida and this Judicial District. For example:

       a.    Defendant Internet Stores accept orders of Counterfeit Products from and offer shipping to Florida addresses located in this Judicial District.

       b.    Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Florida and in this Judicial District, through accounts (the "User Account(s)") with online marketplace platforms such as Amazon and Walmart, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the U.S., including Florida (and more particularly, in this Judicial District), can view the one or more Defendant Internet Stores, communicate with Defendants regarding their listings for Counterfeit Products, and place orders for, receive invoices for, and purchase Counterfeit Products for delivery in the U.S., including Florida (and specifically, in this Judicial District), as a means for establishing regular business with the U.S., including Florida (and specifically, in this Judicial District).

       c.    Upon information and belief, Defendants have transacted business with consumers located in the U.S., including Florida (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

    13.    Venue is proper in this Court pursuant to at least 28 U.S.C. § 1391(b)(2) and S.D. Fla. Local Rule 3.1 because Defendants have committed acts of trademark infringement in this Judicial District and within Miami-Dade County and have conducted substantial business in this Judicial District and County.  Specifically, Defendants are reaching out to do business with Florida residents including those in Miami-Dade County by operating one or more commercial, interactive

Internet Stores through which Florida residents in Miami-Dade County can purchase products infringing on the HAPPY FEET Trademarks. Each Defendant has targeted sales from Florida residents by operating online stores that offer shipping to the United States, including in Miami-Dade County. Each Defendant is committing tortious acts in Florida, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Florida.

## THE PLAINTIFF

14.     Plaintiff HAPPY FEET is a limited liability company organized and existing under the laws of the State of Ohio with its principal place of business in Mentor, Ohio.

15.     Currently, and since the launch of its trademarked and patented foot gear in 2007, Plaintiff specializes and has specialized in the development and marketing of foot alignment socks that incorporate the HAPPY FEET Trademark (the "HAPPY FEET Products").

16.     Plaintiff is the owner and lawful assignee of all right, title, and interest in and to the HAPPY FEET Trademark, including the following trademarks:

| U.S. Trademark Registration No. | Description | Registration Date |
|---|---|---|
| 7,198,440 | MY-HAPPY FEET (word mark) | Oct. 24, 2003 |
| 6,897,260 | THE ORIGINAL FOOT ALIGNMENT SOCKS (word mark) | Nov. 08, 2022 |

(*See* Ex. 1.)

## THE HAPPY FEET PRODUCTS

17.     Plaintiff is the owner and lawful assignee of all right, title, and interest in and to the HAPPY FEET Trademark, including the following trademarks:

18.     Plaintiff is the leading manufacturer and official U.S. source of the HAPPY FEET Products—socks that provide a non-surgical and holistic method to eliminate foot pain by aligning the toes and improving foot circulation. The HAPPY FEET Products are the leading option for

toe alignment socks due to their patented design, comfortability, and reliability, established by Plaintiff's thousands of 5-star reviews from satisfied customers.  Further, the HAPPY FEET Products' innovative design has been recognized throughout the footwear industry and media, including acclaims from popular publications such as *Newswire* and *SELF Magazine*.[2]

19.    Since Plaintiff launched its HAPPY FEET Products in 2007, the company has followed a defined strategy for positioning its brand, establishing distribution channels, and marketing and promoting the products in the industry and to consumers.  Plaintiff's promotional efforts of its HAPPY FEET Products include, by way of example but not limitation, substantial advertising and marketing on websites including Google and Amazon; campaigns on social media platforms including Instagram, Facebook and Pinterest; and promotions on the my-happyfeet.com website and print material.  Plaintiff has spent substantial time, money, and other resources on advertising and otherwise promoting its HAPPY FEET Products.

20.    Plaintiff's HAPPY FEET Products are distributed and sold to consumers throughout the world, including in the United States and Florida through authorized retailers, various affiliates, and the https://www.my-happyfeet.com/ website.

21.    The HAPPY FEET Products have become enormously popular, driven by Plaintiff's arduous quality standards and distinctive innovative designs.  These designs are broadly recognized by consumers as being sourced from Plaintiff.  Products fashioned after these designs are associated with the quality and innovation that the public has come to expect from the HAPPY FEET Products.  Plaintiff uses these designs in connection with the HAPPY FEET Products,

---

[2] *See* NEWSWIRE, *My Happy Feet Socks Under Review: The Patented Toe Alignment Socks That Reduce Foot Pain Naturally*, https:// www.newswire.com/news/my-happy-feet-socks-under-review-the-patented-toe-alignment-socks-that-22637805; Sara Coughlin, *7 Toe Spacers That'll Give Your Piggies Room to Breathe*, SELF, https:// www.self.com/story/best-toe-spacers.

including, but not limited to, the HAPPY FEET Trademark.

22.     Plaintiff is the official source of the HAPPY FEET Products, which include innovative foot alignment socks utilizing the HAPPY FEET Trademark as pictured below:



**My-Happy Feet ® The Original Foot Alignment Socks**
(U.S. TM Reg. No. 7,198,440)

### THE DEFENDANTS

23.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China, which is the country listed on Defendants' seller information pages on their Internet Stores.  Defendants conduct business throughout the United States, including within Florida and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores.  Each Defendant targets the United States, including Florida, and has offered to sell and, on information and belief, has sold and continues to sell infringing HAPPY FEET Products to consumers within the United States, including Florida and in this Judicial District.

### TEMPORARY REDACTION OF DEFENDANTS' IDENTITIES

24.    Pursuant to S.D. Fla. Local Rule 5.4(b)(1), Plaintiff is attaching a redacted version of the Schedule A contemporaneously with the Complaint. This redacted Schedule A, in which the Defendants are identified by Doe number and platform, prevents premature disclosure of Defendants' full identities and avoids alerting infringers who monitor federal court dockets and destroy evidence or transfer assets before the Court has the opportunity to act on Plaintiff's anticipated request for *ex parte* relief.

25.    Temporary redaction and sealing of the unredacted Schedule A is consistent with the procedures previously approved in this Court. *See, e.g.*, *Complaint* at 18, *Tottenham Hotspur Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 1:25-cv-20476 (S.D. Fla. Jan. 31, 2025) (showing a redacted Schedule A filed contemporaneously with the initial complaint); *Order Granting Motion to Seal*, *Tottenham Hotspur Ltd.*, No. 1:25-cv-20476 (S.D. Fla. Feb. 3, 2025), Dkt. No. 8 (granting motion to seal after Plaintiff filed a redacted Schedule A contemporaneously with the initial complaint); *see also A.T. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 25-cv-21168, 2025 WL 2506612, at *1– 2 (S.D. Fla. Mar. 18, 2025) (authorizing a complaint with initially restricted information to prevent premature notice to infringers and preserve the effectiveness of injunctive relief).

26.    Once the Court's filing system permits the Plaintiff to do so after a Judge is assigned to this case, Plaintiff will promptly file a Motion to File Under Seal the unredacted version of the Schedule A, which identifies the full names, and identifying online marketplace store URLs of the Defendants. *See A.T.*, 2025 WL 2506612, at *2 (noting temporary restriction within a complaint was justified where the plaintiff "assure[d] the Court that it will proceed under [a non-limited complaint] once the Defendants are served and their accounts are restrained").

**DEFENDANTS' UNLAWFUL CONDUCT**

8

27.     The success of the HAPPY FEET Products has resulted in a significant number of products that infringe the HAPPY FEET Trademark.

28.     Plaintiff has identified numerous Defendant Internet Stores linked to fully interactive websites and marketplace listings on platforms such as Amazon, and Walmart.  These Defendant Internet Stores offer for sale, sell, and import Counterfeit Products to consumers in this Judicial District and throughout the United States.

29.     Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores.  In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2021 was over $3.3 billion.  Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

30.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine HAPPY FEET Products.  Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal.  Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

31.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to

associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

32.     Plaintiff has not licensed or authorized Defendants to use the HAPPY FEET Trademarks, and none of the Defendants is an authorized retailer of genuine HAPPY FEET Products.

33.     On personal knowledge and belief, Defendants also deceive unknowing consumers by using the HAPPY FEET Trademarks without authorization within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for HAPPY FEET Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine HAPPY FEET Products.  Further, Defendants utilize similar illegitimate SEO tactics to propel new internet storefront listings to the top of search results after others are shut down.  As such, Plaintiff also seeks to disable the Defendant Internet Stores owned and/or operated by Defendants that are the means by which the Defendants could continue to sell Counterfeit Products into this Judicial District.

34.     On personal knowledge and belief, Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more seller aliases, offer shipping to the United States, including Florida, accept payment in U.S. dollars and have sold Counterfeit Products to residents of Florida.

35.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their sophisticated

10

network of Defendant Internet Stores.  For example, it is common practice for infringers to register their Defendant Internet Stores with incomplete information, randomly typed letters, or omitted cities or states, as Defendants here have done.

36.     On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses.  Such Defendant Internet Store registration patterns are one of the common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive e-commerce operations, and to avoid being shut down.

37.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.  For example, some of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the Defendant Internet Stores.

38.     The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

39.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts.  For example, infringers like Defendants will often register new

online marketplace accounts under User Accounts once they receive notice of a lawsuit.[3]

40. Infringers also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[4]

41. Further, infringers such as Defendants typically operate multiple credit card merchant accounts as well as e-commerce accounts, such as PayPal, behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts.

42. On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their e-commerce, PayPal, and other financial accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

43. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the HAPPY FEET Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Florida over the Internet.

44. Each Defendant Internet Store offers shipping to the United States, including Florida (in this Judicial District) and, on information and belief, each Defendant has offered to sell

---

[3] *See* https://www.ice.gov/features/dangers-counterfeit-items (noting counterfeiters are "very adept at setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites") (last visited October 29, 2025).

[4] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. *See* COMM. ON ENERGY & COM., 113TH CONG., COUNTERFEIT DRUGS: FIGHTING ILLEGAL SUPPLY CHAINS (COMM. PRINT. 2014) (available online at https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm).

Counterfeit Products into the United States, including Florida (in this Judicial District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

45.     Prior to and contemporaneous with their infringing actions alleged herein, Defendants had knowledge of (i) Plaintiff's ownership of the HAPPY FEET Trademarks, (ii) the fame and incalculable goodwill associated therewith, and (iii) the popularity and success of the HAPPY FEET Products.  Defendants in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

46.     Defendants have been engaging in the infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff and the HAPPY FEET Products.

## <u>FIRST CAUSE OF ACTION</u>
### <u>TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)</u>

47.     Plaintiff hereby re-alleges and incorporates by reference herein the allegations set forth in paragraphs 1–46 of this Complaint.

48.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered HAPPY FEET Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of Counterfeit Products. The HAPPY FEET Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products provided under the HAPPY FEET Trademarks.

49.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the HAPPY FEET Trademarks without Plaintiff's permission.

50.     Plaintiff is the registered owner of the HAPPY FEET Trademarks. The United States Registrations for the HAPPY FEET Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the HAPPY FEET Trademarks and are willfully infringing the HAPPY FEET Trademarks. Defendants' willful, intentional, and unauthorized use of the HAPPY FEET Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public as demonstrated by the exemplary image that follows:



*Exemplary Image of Counterfeit Product Sold by Defendant Infringing on Plaintiff's Registered Trademarks*

51.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

52.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

53.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known HAPPY FEET Trademarks.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable and monetary relief against Defendants as follows:

1.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.     manufacturing, importing, advertising, promoting, offering to sell, selling; further infringing the HAPPY FEET Trademarks and damaging Plaintiff's goodwill distributing, or transferring any products not authorized by Plaintiffs;

b.     aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the HAPPY FEET Trademarks;

c.     using the HAPPY FEET Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine HAPPY FEET Products or is not authorized by Plaintiff to be sold in connection with the HAPPY FEET Trademarks;

d.    passing off, inducing, or enabling others to sell or pass off any product as a genuine HAPPY FEET Products or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the HAPPY FEET Trademarks;

e.    committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

f.    further infringing the HAPPY FEET Trademarks and damaging Plaintiff's goodwill;

g.    otherwise competing unfairly with Plaintiff in any manner;

h.    shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which infringe on the HAPPY FEET Trademarks;

i.    using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products;

j.    operating and/or hosting websites at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product infringing on the HAPPY FEET Trademarks or any reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine HAPPY FEET Products or not authorized by Plaintiff to be sold in connection with the HAPPY FEET Trademarks; and

16

       k.     effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) through (k).

2.     Entry of an Order that the Marketplace Platforms, including without limitation Amazon, Walmart, and any other online marketplace account through which Defendants are selling Counterfeit Products:

       a.     disable and cease providing services for any accounts through which Defendants sell Counterfeit Products, including any accounts associated with the Defendants listed on Schedule A;

       b.     disable and cease displaying any advertisements used by or associated with Defendants in connection with their sale of Counterfeit Products; and

3.     take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

4.     That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the HAPPY FEET Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5.     In the alternative, that Plaintiff be awarded statutory damages of not less than $1,000 and not more than $2,000,000 for each and every use of the HAPPY FEET Trademarks and statutory damages pursuant to 15 U.S.C. § 1117(c);

6.     That Plaintiff be awarded their reasonable attorneys' fees and costs; and

7.     Any and all other relief that this Court deems just and proper.

Dated: November 10, 2025

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By: */s/ Valeria Munoz*
Valeria Munoz (FL Bar No. 1059554)
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Tel: (305) 357-8433
Email: vmunoz@bsfllp.com

*Counsel for Plaintiff Happy Feet Company LLC*

**REDACTED SCHEDULE A**

This Schedule A is the subject of Plaintiff's forthcoming Motion to File Under Seal. As

such, this page has been redacted in accordance with Local Rule 5.4(b)(1).

| DOE No. | Defendant Seller | Defendant Online Marketplace |
|---|---|---|
| 1 | ██████ | https://www.amazon.com/sp?seller=████ |
| 2 | ██████ | https://www.walmart.com/reviews/seller/ |
| 3 | ██████ | https://www.walmart.com/reviews/seller/ |
| 4 | ██████ | https://www.walmart.com/reviews/seller/ |
| 5 | ██████ | https://www.walmart.com/reviews/seller/ |
| 6 | ██████ | https://www.walmart.com/reviews/seller/ |
| 7 | ██████ | https://www.walmart.com/reviews/seller/ |
| 8 | ██████ | https://www.walmart.com/reviews/seller/ |
| 9 | ██████ | https://www.walmart.com/reviews/seller/ |
| 10 | ██████ | https://www.walmart.com/reviews/seller/ |
| 11 | ██████ | https://www.walmart.com/reviews/seller/ |
| 12 | ██████ | https://www.walmart.com/reviews/seller/ |
| 13 | ██████ | https://www.walmart.com/reviews/seller/ |
| 14 | ██████ | https://www.walmart.com/reviews/seller/ |
| 15 | ██████ | https://www.walmart.com/reviews/seller/ |
| 16 | ██████ | https://www.walmart.com/reviews/seller/ |
| 17 | ██████ | https://www.walmart.com/reviews/seller/ |
| 18 | ██████ | https://www.walmart.com/reviews/seller/ |
| 19 | ██████ | https://www.walmart.com/reviews/seller/ |
| 20 | ██████ | https://www.walmart.com/reviews/seller/ |
| 21 | ██████ | https://www.walmart.com/reviews/seller/ |
| 22 | ██████ | https://www.walmart.com/reviews/seller/ |

1